**James FOX, Petitioner,**

**v.**

**U. S. PAROLE COMMISSION, et al., Respondents.**

**No. 80–3044.**

United States District Court, D. Kansas.

March 20, 1981.

Dennis McFall, Lawrence, Kan., Joe Harvey Slomsky, Philadelphia, Pa., for petitioner.

James P. Buchele, U. S. Atty., Topeka, Kan., for respondents.

MEMORANDUM AND ORDER

ROGERS, District Judge.

James Fox, having paid the necessary fee, has filed with the Clerk of the Court this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 alleging that the Parole Commission improperly rescinded his "effective date of parole." A rule to show cause issued to which respondents filed an Answer and Return. Petitioner subsequently filed his Traverse and supplemental material thereto. Having examined all pleadings and attachments, the Court makes the following findings and Order.

Petitioner does not refute these facts as set out in the Answer and Return:

(1) Petitioner is currently serving a thirty-year sentence at the United States Penitentiary, Leavenworth, Kansas, by virtue of his conviction entered in the United States District Court for the Eastern District of Pennsylvania on March 25, 1975, upon jury verdicts of guilty of nine counts of conspiracy in distribution of controlled substances and unlawful use of a communications facility.

(2) On February 2, 1976, petitioner appeared before a panel of examiners at his initial parole hearing. From the reports and information considered, the panel determined that petitioner's offense was part of a large-scale and ongoing conspiracy so that consideration for parole above the Commission's guidelines was proper. Petitioner was notified of the continuation of his case for an institutional review hearing in February, 1979.

(3) On February 21, 1979, petitioner again appeared before an examiner panel of the Parole Commission. The panel considered petitioner's institutional adjustment, release plan, presentence information contained in a co-defendant's file and a report of the United States Attorney. Based primarily upon an institutional progress report dated December 1, 1978, the panel recommended that petitioner be paroled effective June 8, 1979, to a detainer, or if the detainer was withdrawn, effective July 13, 1979, to the community. The Regional Commissioner concurred in this result and petitioner was notified of the decision to grant parole by notice of action dated March 6, 1979. The detainer was subsequently withdrawn.

(4) David J. McKeon, the Department of Justice Attorney who had prosecuted petitioner upon learning of the decision objected to the early release and was urged to write his objections in a letter to the Commission. Regional Commissioner Mulcrone then called Mr. McKeon seeking further information.

During this conversation, Mulcrone explained that two comments which appeared in the *Report on Convicted Prisoner by United States Attorney* and the Government's presentence information relied upon by the Commission in making their decision indicated only that petitioner was involved in various telephone conversations which resulted in the sale of approximately $3600 worth of heroin, and that he did not feel

that this in any way substantiated that petitioner was second in command in a heroin distribution ring supplying over 60% of the heroin distributed in Philadelphia. Mr. McKeon then assured the Regional Commissioner that he would have further details of petitioner's involvement with the Black Mafia referred to the Commission so that petitioner's case might be reconsidered.

(5) Thereafter, the Regional Commissioner received letters from two agents and an attorney apparently involved in the prosecution, together with investigative materials, aimed at substantiating petitioner's significant involvement with the Black Mafia and drug trafficking in Philadelphia. Newspaper and magazine articles were also submitted indicating the fears and indignation suffered by the community as a result of the activities of the Black Mafia.

(6) As a result of this information, on July 2, 1979, the Regional Commissioner referred petitioner's case to the National Commissioners for reopening and reconsideration pursuant to 28 C.F.R. § 2.28(f). Petitioner was informed by notice of action dated July 12, 1979, of the Commissioner's order to reopen his case and retard parole and to schedule a special reconsideration hearing in August, 1979. The notice made reference to the new adverse information received in specified letters and attachments.

(7) On August 27, 1979, petitioner received a special reconsideration hearing at Leavenworth before a panel of Commission hearing examiners, in accordance with the procedures set forth in 28 C.F.R. §§ 2.12 and 2.13. He was represented by counsel at the hearing. The information received from the Justice Department Strike Force and the Drug Enforcement Administration was discussed, and petitioner was given opportunity to respond to the allegations. Petitioner denied association with the narcotics organization and leadership in the Philadelphia narcotics conspiracy. The panel of hearing examiners recommended that petitioner be continued to a ten-year reconsideration hearing in August, 1989. The Regional Commissioner concurred in this decision, and referred the case to the National Commissioners for consideration because of its original jurisdiction classification. By notice of action dated October 31, 1979, petitioner was informed of the National Commissioners' concurrence that upon the new adverse information received, his case should be continued to August, 1989, with a statutory interim hearing in August, 1981. Petitioner appealed the decision to the full Commission which affirmed the National Commissioners' decision by order dated February 5, 1980. This habeas petition followed.

Petitioner challenges the reopening and rescission of his parole on the ground that the adverse information relied upon was not "new" as required by 28 C.F.R. § 2.28(f). In support of this assertion petitioner alleges that in the Form 792 report, which was at the examiner's disposal, the United States Attorney noted that

> "Fox was the second in command . . . in a large scale heroin distribution ring operating in Philadelphia. Intercepted conversations and subsequent purchases of heroin by a Government informant showed that Fox was the overall coordinator for the distribution of heroin. Drug Enforcement Administration intelligence information indicates that this group, calling itself the "Black Mafia" accounted for over 60% of the heroin distribution in Philadelphia."

Respondent counters that the Commission did not initially rely upon the allegations in the Form 792 report because they were unsubstantiated, and that the "new" information consisted of letters and investigative materials not previously viewed by the Commission which substantiated the conclusory statements in the report.

As legal authority for his claim, petitioner cites *Ready v. United States Parole Commission*, 483 F.Supp. 1273 (M.D.Pa.1980) [hereinafter cited as *Ready*], and the unpublished memorandum opinion in a similar habeas corpus action filed by one of his co-defendants: *Hearn v. Nelson*, 496 F.Supp. 1111 (D.Conn.1980) [hereinafter cited as *Hearn*].

*Hearn v. Nelson, supra,* is distinguishable from the instant case. The district court in *Hearn* found that National Commissioners had relied upon materials from the Drug Enforcement Administration's files which substantiated a Form 792 Report in denying Hearn's application for parole but did not state in its notice of action that this information was the basis for its decision. Thus, the statements of reasons were held to be inadequate. Moreover, this material was not disclosed to Hearn by the Commission prior to his hearing or rehearing. On this ground, the court held that the Commission abused its discretion in relying upon this material.

In the case before us, petitioner was notified prior to the rescission hearing of the contents of the material to be considered at the hearing, and the subsequent statement of reasons for the Commission's decision to rescind cites the "new information" as the basis. Therefore, we are not faced here with the Commission's violations of applicable statutes and its own regulations which were held to be a denial of due process rights in *Hearn.*

*Ready v. United States Parole Commission, supra,* does support petitioner's contentions. However, we do not find the reasoning of that case persuasive. In *Ready* the parole applicant, after having been granted an effective date of parole, was advised that new adverse information had been received by the Commission on the basis of which his case was to be reopened and scheduled for a rescission hearing. The "new information" was Ready's alleged aiding of inmates at the United States Penitentiary, Leavenworth, Kansas, in obtaining fraudulent refunds from the IRS. Ready indicated that the Commission was aware of his alleged involvement in the prisoner tax fraud at Leavenworth at the time of granting his parole date and argued that this was not "new information" within the meaning of 28 C.F.R. § 2.34(b)(1) (1978). The Commission maintained that the new information which caused them to reopen the case was a letter from the United States Attorney for the District of Kansas detailing petitioner's involvement in the Leavenworth prisoner tax frauds, and that until receipt of this letter the only information they had viewed on the incident was a letter from petitioner denying involvement.

The court in *Ready* stated that it could not accept respondents' argument that the information received from the United States Attorney was "new information" within the meaning of § 2.34(b)(1). The court reasoned that the Commission was aware of Ready's possible involvement from his letter of denial at the time they granted parole and that they had the opportunity at the time to seek additional information with respect to Ready's alleged involvement if the members thought it was important to the decision. The court held that the Commission's "failure to seek such information about an event brought to their attention precludes them from relying upon subsequently discovered information to rescind Ready's parole," *Ready, supra,* at 1276–1277. No legal precedent is cited in support of this reasoning.

Our determination of this legal issue is made mindful of the rule that a federal district court may not review the actions of the Parole Commission absent a showing of arbitrary and capricious action or a misapplication of the law. *United States v. Talk,* 597 F.2d 249 (10th Cir. 1979); *Dye v. United States Parole Commission,* 558 F.2d 1376 (10th Cir. 1977).

The regulation pursuant to which petitioner's parole grant was rescinded is 28 C.F.R. § 2.28(f) (1979), which pertinently provides:

> Upon receipt of new information adverse to a prisoner . . ., the Regional Commissioner may refer the case to the National Commissioners with his recommendation and vote to retard parole and schedule the case for a special reconsideration hearing. The decision shall be based on the concurrence of 3 out of 5 votes, and the hearing shall be conducted in accordance with the procedures set out in §§ 2.12 and 2.13. The entry of a new order following such hearing shall void the previously established release date.

The manifest prerequisite to a reopening under § 2.28(f) is the receipt of new adverse

information. The petitioner and the court in *Ready* seek to ascribe a corollary prerequisite to this regulation—that the new information could not, through due diligence, have been discovered prior to or at the hearing. This additional prerequisite is not shown to have foundation in any statute, regulation, agency practice or federal due process. Moreover, the very nature of the parole determination procedure belies the existence of this additional prerequisite.

The parole determination by statutory and regulatory design is a continual and conditional process. The Commission is not limited to a single opportunity to consider information relevant to the advisability of releasing a particular inmate on parole, at which time they must gather all available, relevant facts and fully develop potentially adverse information. The Commission is a record reviewing, rather than an investigative, agency which considers information made available to it by the applicant, the Bureau of Prisons, and other interested persons or agencies, *see* 18 U.S.C. § 4207. The Commission is not required by statute or regulation to solicit recommendations from the sentencing judge and prosecuting attorney or to investigate unsubstantiated allegations and yet they may consider such information if available. They are plainly required to consider certain specified information together with other relevant information that is "reasonably available" and to base their decision upon such information. 18 U.S.C. §§ 4206(a), 4207. The parole proceeding is not a civil or criminal trial, nor the Commission an adversary at trial, so that new evidence in order to command a rehearing must be evidence that could not have been discovered by due diligence at the time of trial. It follows that there is no basis in the Commission's statutory or regulatory scheme for precluding their consideration of additional, relevant information on the ground that they should have investigated unsubstantiated allegations.

Furthermore, we deal here with an agency which has the main and weighty purpose of determining whether a particular prison inmate is a good parole candidate whose release would not jeopardize the public welfare, 18 U.S.C. § 4206(a)(2). The Commission's regulations are promulgated to effectuate this purpose, and deference is to be accorded to the agency's construction of their regulations. *See McClanahan v. Mulcrome*, 636 F.2d 1190 (10th Cir., 1980, unpublished). Section 2.28(f), construed and applied as it is by the Parole Commission to include among "new information" material not previously received thereby, clearly serves that statutory purpose. We conclude that it was neither illegal nor illogical for the Parole Commission to have treated the corroborative material not received by the Commissioner until after the grant of parole in petitioner's case as "new information" within the meaning of § 2.28(f). *See McClanahan v. Mulcrome, supra.*

In the instant case, the examiners recommending parole had before them information concerning petitioner's favorable institutional conduct, presentence materials and a United States Attorney's report containing a few unsubstantiated allegations of petitioner's involvement with drug traffic in the Philadelphia area. On the basis of the available information, the Commission determined that parole should be granted. Thereafter, additional, relevant information was made available to the Commission by concerned and knowledgeable agencies and individuals which corroborated the unsubstantiated allegations. We do not believe that because the Commission declined on its own initiative to seek substantiation of the United States Attorney's allegations prior to the initial grant of parole, they are thereafter precluded from considering such relevant information in a rescission hearing. Such a result ignores the public interest purpose of the Commission to release only those inmates who are determined to be good parole risks.

Certainly it would be advisable for persons interested in the outcome of a particular parole application to make relevant information available to the Commission prior to any hearing. However, we cannot say that the Commission's consideration of relevant materials is arbitrary or capricious or without rational basis simply because the

contributor failed to make the information available at an earlier time. We are of the opinion that the tardiness of interested parties should not preclude the Commission from reviewing materials relevant to whether the particular parole grantee is an improper candidate for early release. The limited liberty interest of the grantee prior to actual release is clearly outweighed by the agency and public interest in informed, correct parole determinations.

It serves the Commission's purpose of not paroling improper candidates to receive and consider adverse information of the nature considered here. Moreover, the administrative record in this case shows that the determination that petitioner is not a good parole candidate based upon the additional information was neither arbitrary or capricious and was reached with the requisite procedural due process. *See Robinson v. Benson,* 570 F.2d 920 (10th Cir. 1978).

For all the foregoing reasons, it is

ORDERED that this action be dismissed and all relief denied and that the Clerk transmit copies of this Memorandum and Order to petitioner and to the United States Attorney.