**Armando TORRES–MACIAS,
Petitioner-Appellant,**

v.

**UNITED STATES PAROLE COMMIS-
SION, Respondent-Appellee.**

No. 83–5703.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 10, 1983.

Decided Jan. 24, 1984.

Rehearing and Rehearing En Banc
Denied April 25, 1984.

Michael D. Abzug, Los Angeles, Cal., for petitioner-appellant.

Brian J. Hennigan, Asst. U.S. Atty., Los Angeles, Cal., for respondent-appellee.

Before CHOY, WALLACE, and ANDERSON, Circuit Judges.

WALLACE, Circuit Judge:

Torres-Macias appeals from the denial of a writ of habeas corpus. Following his

convictions for participation in large drug smuggling conspiracies, the United States Parole Commission (the Commission) granted Torres-Macias an effective parole date of July 16, 1981. In April of 1981, the Commission requested additional information on Torres-Macias from the Drug Enforcement Administration (DEA). Based on that information, the Commission decided to reconsider his parole. *See* 28 C.F.R. § 2.28(f). On reconsideration, it concluded Torres-Macias should serve the full term of his sentences and delayed his parole until 1990. He then sought habeas corpus from the district court, which was denied. Having jurisdiction of this appeal under 28 U.S.C. § 2253, we affirm.

## I

In 1975, Torres-Macias was sentenced to ten years in prison for conspiring to import and distribute various illegal drugs. While on bail pending appeal, he continued to participate in drug smuggling. As a result, in 1977 the same district court convicted him of conspiracy to import and distribute almost one million amphetamine tablets and imposed a second, consecutive ten year sentence.

In 1979, about two years into this twenty-year total prison term, Torres-Macias received a parole hearing. The hearing examiners had before them information which indicated that Torres-Macias apparently "controlled [the] cash flow necessary to purchase and distribute the drugs smuggled in from Mexico"; that he was a "mainline conspirator" in large-scale smuggling operations involving "pound quantities of heroin, cocaine, amphetamines, and marijuana"; that he had a long prior record of arrests and offenses; and that his first prosecution resulted from investigations dating back eight years. Taking into account his history, the severity of his offenses, his remorse, his family's problems, and other factors, the examiners recommended Torres-Macias receive a parole date of July 16, 1981.

Torres-Macias appealed. At each appellate level, the regional or national officers of the Commission affirmed the 1981 parole date.

Less than four months before Torres-Macias' expected parole, however, the Chief Assistant United States Attorney in the district in which he was convicted wrote to the Commission urging it to reassess its decision. The Commission responded by requesting additional information from the DEA on Torres-Macias. In April 1981, the DEA replied with a thirty-two page report taken from its files and a sixteen page report from the Los Angeles Police Department (the reports). The reports largely restated information used against Torres-Macias at trial, but they were not before the Commission during its consideration of parole.

On the basis of information contained in the reports, the Commission retarded parole and reopened Torres-Macias' case. Following a full hearing, it ordered that, rather than receive parole in 1981, Torres-Macias would continue to serve his sentences until their expiration.

## II

The Commission reconsidered Torres-Macias' parole pursuant to 28 C.F.R. § 2.28(f). At the beginning of 1981, an interim version of section 2.28(f) permitted that

> Upon receipt of *new information* adverse to a prisoner ..., the Regional Commissioner may refer the case to the National Commissioners with his recommendations and vote to retard parole and schedule the case for a special reconsideration hearing.... The entry of a new order following such hearing shall void the previously established date.

28 C.F.R. § 2.28(f) (1979) (emphasis added). An earlier version of the regulation had required "new information of *substantial significance* " for reopening a parole decision. 28 C.F.R. § 2.28 (1978) (emphasis added). In January of 1981, the Commission adopted a standard holding that "receipt of *new and significant* adverse information" would justify a rehearing. 45 Fed. Reg. 84,053 (Dec. 22, 1980) (effective date

January 21, 1981), *codified at* 28 C.F.R. § 2.28(f) (emphasis added).

In considering Torres-Macias' case, the Commission followed the newest version of 2.28(f) and analyzed the reports for "new and significant adverse information." The district court concluded that the Commission needed follow only the lesser standard of the interim version of section 2.28(f), which did not require the new information to be significant. Nevertheless, the district court held that the Commission had "made a determination that the information from the DEA was both 'new' and 'significant'" and that this was an "interpretation given Section 2.28(f) . . . not clearly erroneous or inconsistent with the regulation." In effect, therefore, the district court reviewed the decision of the Commission under the more strict version of section 2.28(f). Thus, there can be no error assigned based upon the standard of review used by the Commission and the district court. Indeed, the parties have failed to raise the issue.

### III

We understand our role in reviewing the specialized and sensitive role of the Commission in determining parole dates is necessarily very limited. We recently stated in *Williams v. United States Parole Commission*, 707 F.2d 1060, 1063 (9th Cir.1983) (*Williams*), that "[a] court should not override the judgment of the Commission unless it has abused its discretion," *see also Reynolds v. McCall*, 701 F.2d 810, 813 (9th Cir.1983); *Hatton v. Keohane*, 693 F.2d 88, 90 (9th Cir.1982); *O'Brien v. Putnam*, 591 F.2d 53, 55 (9th Cir.1979), and that the Commission's interpretation of its regulations, such as section 2.28(f), "is entitled to deference, unless the interpretation is shown to be plainly erroneous or inconsistent with the regulation," *see also Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–802, 13 L.Ed.2d 616 (1965); *McClanahan v. Mulcrome*, 636 F.2d 1190, 1191 (10th Cir.1980). Torres-Macias has the burden of proving the abuse of discretion, the plain error, or the inconsistency. In contending that he has done so, his arguments

fall into three categories: (A) an argument against the Commission's general interpretation of what is "new information"; (B) an argument that none of the particular information in the reports was "new"; and (C) an argument that the Commission abused its discretion in extending his parole date based on this information.

### A.

The district court discovered no "official" interpretation of "new" as used in section 2.28(f), but did find that the Commission's accepted interpretation was "information not considered by the Commission although it was in existence at the time of decision." The Commission agrees. Torres-Macias argues that, to the contrary, information in existence and readily available, although never considered by the Commission, cannot be "new." *See Ready v. United States Parole Commission*, 483 F.Supp. 1273, 1277 (M.D.Pa.1980).

In *Williams*, we "refuse[d] to adopt an ironclad rule that the Commission can never reopen a case under section 2.28(f) on the basis of a document that is in its file, but which has not in fact been considered by the examiners in making their parole decision." 707 F.2d at 1065. In reviewing the Commission's interpretation of "new" in section 2.28(f), we have no hesitation in rejecting the limitations of *Ready v. United States Parole Commission* urged by Torres-Macias.

■ The Commission's interpretation— that new information is information not previously considered—is neither plainly erroneous nor inconsistent with section 2.28(f). It accords with the weight of decided authority. *See, e.g., Fardella v. Garrison*, 698 F.2d 208, 211 (4th Cir.1982); *McClanahan v. Mulcrome*, 636 F.2d at 1191; *Iuteri v. Nardoza*, 560 F.Supp. 745, 753 (D.Conn.1983) (*Iuteri II*); *Fox v. United States Parole Commission*, 517 F.Supp. 855, 859 (D.Kan.1981); *see also Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir.1981) (*Iuteri I*). It is consistent with the Commission's recent informal commentary on section 2.28(f): "This subsection is the ap-

propriate mechanism for reopening cases to consider new information ... that would have resulted in a different decision had the information been presented to the Commission at the time of the initial parole hearing." United States Parole Commission Rules and Procedures Manual § 2.28-02(f), at 42 (March 1, 1982); *see Fardella v. Garrison,* 698 F.2d at 211; *Iuteri II,* 560 F.Supp. at 753. Finally, it is also consistent with the formal statement of the Commission in amending section 2.28(f): "it is apparently impossible to eliminate altogether the possibility that an approaching release date will prompt certain persons or authorities possessing adverse information ... to disclose that information to the Parole Board for the first time ... such a case must be reopened under 28 CFR 2.28(f) ...." 45 Fed.Reg. 84,053 (Dec. 22, 1980); *see Iuteri II,* 560 F.Supp. at 753. Consequently, we uphold the Commission's interpretation of "new information" as information not considered at the time of the parole decision.

### B.

Torres-Macias also argues that none of the particular information in the reports is new. He contends that the reports merely reiterate what was before the Commission initially. The Commission disagrees and identifies three areas of new information which caused it to reconsider and change his parole date.

The Commission first points to the extensive prior investigations of Torres-Macias as revealed by the reports which indicate his active participation in drug smuggling at least from 1968 to 1975, while earlier reports had not clearly established as active an involvement over as long a time. The Commission next indicates that the reports establish Torres-Macias as the "titular head" of a large scale drug ring—he "controls and runs the organization in every detail"—not just a "mainline conspirator," someone controlling the cash flow, or "*one* of the primary figures." Finally, the Commission points out that the reports state Torres-Macias' organization imported about thirty pounds of heroin per week and distributed over twelve and a half pounds (200 ounces) of heroin and cocaine each week, rather than simply dealing over a two-year span in pound quantities of "drugs" or, collectively, "heroin, cocaine, marijuana and amphetamines."

The Commission determined this information was "new." It is true that the same subject matter of drug smuggling was before the Commission in both instances but that is not the test. Applying the interpretation that "information not considered by the Commission although it was in existence at the time of the decision" is "new," we cannot say the Commission acted in an arbitrary or capricious fashion, *see Williams,* 707 F.2d at 1066, or abused its discretion in making this determination, *see generally O'Brien v. Putnam,* 591 F.2d at 55.

Torres-Macias wrongly contends that *Williams* is to the contrary. There, the new information was the sentencing judge's comments regarding parole. Williams argued that the examiners had substantially the same information before them at the time of the initial parole determination and thus the judge's comments could not be new significant information. We disagreed: "In our view the sentencing judge's opinion at the time of sentencing is itself a significant 'fact.'" 707 F.2d at 1065. Implicit in this finding was a conclusion that the comments' particular source—the sentencing judge—made them new even if the Commission had substantially the same information from other sources. In the case before us, the information from the reports was new not simply because of its source, as in *Williams,* but also because of its content. It promoted Torres-Macias from a major conspirator to the clear head of a drug ring; it almost doubled the time of his known continuously active involvement with narcotics; and it made clear the extent of his organization's market penetration, replacing uncertainty about "pound quantities" of drugs of various danger with specific, regular massive imports and distri-

butions of the most dangerous drug, heroin.

 Although the parties in this case did not separately address whether this new information was "significant," both accepted the following standard: would the information have changed the Commission's initial release decision had it been received before that decision was made? *See* United States Parole Commission Rules and Procedures Manual, *supra*, at § 2.28–02(f). The record indicates the Commission examined the information in this light. Its decision to go forward with reconsideration of Torres-Macias' case was not arbitrary, capricious, or an abuse of discretion under this standard.

### C.

 Finally, Torres-Macias argues that, having held a rehearing, the Commission abused its discretion in delaying his parole until the expiration of his sentences because it used the same information twice: once to set the initial parole date and once to extend it outside the usual parole guidelines. The general proposition against such double counting appears in *Allen v. Haddon,* 558 F.Supp. 400, 403 (D.Colo. 1983), *quoting Allen v. Hadden,* 536 F.Supp. 586, 596 (D.Colo.1982): "the commission cannot use information to determine offense severity or salient factor score, and then use the same information as a justification for going beyond the guidelines." However, for the reasons given in the two preceding subsections, the information used in justifying delay of Torres-Macias' parole was not the same as that used in determining the severity of his offense. But even if it were, we do not follow the general rule of *Allen v. Haddon. See Reynolds v. McCall,* 701 F.2d at 813 (rejecting the argument that "because the National Commissioners considered the severity of his crime when they placed him in the Greatest II [severity] category, the Commissioners could not reconsider the severity of the crime to justify extending the presumptive parole date ...."); *see also O'Brien v. Putnam,* 591 F.2d at 55.

Although the delay of Torres-Macias' parole date to 1990 may seem harsh to some, we hold the Commission did not abuse its discretion in making the change.

AFFIRMED.