[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15246
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 24, 2011
JOHN LEY
CLERK

D.C. Docket No. 4:09-cv-00100-RH-AK

THOMAS EUGENE THORNE,

                                                        Plaintiff-Appellant,

versus

CHAIRPERSON FLORIDA PAROLE COMMISSION,
TENA M. PATE,
Parole Commissioner,
MONICA DAVID,
Parole Commissioner,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(May 24, 2011)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Thomas Thorne, a Florida prisoner proceeding *pro se*, appeals the district court's order dismissing his 42 U.S.C. § 1983 civil rights complaint. On appeal, Thorne argues that the district court erred in determining that his challenge to Florida's parole practices could not be brought under § 1983. He also contends that the defendants were not entitled to Eleventh Amendment immunity. Thorne further asserts that the district court erred in concluding that he had not stated a claim under the Ex Post Facto Clause. Finally, Thorne argues that he stated valid claims for relief under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. For the reasons stated below, we affirm.

I.

Thorne filed a *pro se* complaint under 42 U.S.C. § 1983 against Frederick B. Dunphy, Chairperson of the Florida Parole Commission, and Parole Commissioners Tena M. Pate and Monica David. Thorne explained that, subsequent to his original sentencing, the Florida legislature made numerous changes to the methods used to calculate eligibility for parole. Among other things, the legislature changed the "matrix time range setting," added new aggravating factors, altered the time frames for review hearings, created "alternative programs rather than violations," changed the number of parole commissioners, and gave the Parole Commission the authority to make policy and

2

promulgate rules. Thorne argued that these changes violated the Ex Post Facto

Clause of the federal constitution to the extent that they had the effect of reducing

his eligibility for parole. He asked the district court to order that his parole

eligibility be reconsidered using the 1978 parole guidelines and any subsequent

changes that worked to his benefit. Thorne later sought leave to amend his

complaint to add claims under the Eighth Amendment and the Due Process and

Equal Protection Clauses of the Fourteenth Amendment.

The district court dismissed Thorne's complaint for failure to state a claim

upon which relief could be granted, Fed.R.Civ.P. 12(b)(6). The district court

noted that changes to a parole system can violate the Ex Post Facto Clause if the

changes create a significant risk of increasing the defendant's punishment, but the

court observed that Thorne's complaint was "long on conclusions and short on

specifics" as to how the changes in Florida's parole procedures affected his term

of imprisonment. The district court allowed Thorne to file an amended complaint

identifying specific changes in Florida's parole procedures that subjected him to a

significant risk of increased punishment.

In his amended complaint, Thorne asserted that Fla.Stat. § 947.174(b)(1)

violated the Ex Post Facto Clause because it provided for parole reviews once

every five years, rather than the two-year reviews that he previously had received.

He asserted that the longer time period between reviews had the effect of increasing his punishment because the delay prevented him from presenting new information that might lower his projected release date. He explained that the length of his sentence affected his custody level, his ability to transfer to other correctional institutions, and his right to participate in vocational training and substance abuse classes.

Thorne's amended complaint also asserted an equal protection claim. Thorne argued that other prisoners who, like him, had been convicted of murder, and who also had a history of parole violations had been given more favorable release dates and more frequent parole hearings. Next, Thorne raised a due process claim. He argued that "Examiner Jennings" had violated his right to due process by revoking his parole. He further contended the five-year delay between parole hearings violated due process because it was selectively applied and was based on vague and arbitrary rules. Finally, Thorne argued that his presumptive parole release date violated the Eighth Amendment and the Florida Constitution.

Attached to Thorne's complaint was a document showing how Thorne's presumptive parole release date was calculated. The Hearing Examiner initially had recommended that Thorne receive a presumptive release date of February 8, 2012. The Parole Commission, however, rejected that recommendation and set a

presumptive release date of February 8, 2034. The Commission also specified that Thorne's next parole interview would take place in March 2012. The Commission explained that Thorne's next interview would be held in five years, rather than two years, because Thorne had been convicted of second degree murder, and because it was not reasonable to expect that he would be granted parole within the next five years. The Commission identified five factors that supported its determination that Thorne was unlikely to be paroled before 2012: (1) the offense involved the use of a firearm and knife; (2) the offense involved multiple separate offenses; (3) an escalating or continuing pattern of criminal conduct; (4) Thorne was a parole violator; and (5) any release might cause unreasonable risk to others.

The district court dismissed Thorne's amended complaint. First, the district court observed that Thorne still had not identified any changes to the Florida parole system that created a substantial risk of increasing his punishment. Accordingly, the court determined that the amended complaint failed to state an *ex post facto* claim. The district court noted that the amended complaint raised additional claims that the Parole Commission had failed to follow state law in setting Thorne's presumptive parole release date, and that Thorne was treated less favorably than similarly-situated inmates. The district court concluded that those allegations failed to state a claim under § 1983 for several reasons. First, the court

observed that state officials had Eleventh Amendment immunity in federal courts from claims alleging violations of state law. Second, the district court noted that Thorne could not bring a claim under § 1983 if success on that claim necessarily would end or shorten his period of incarceration. Finally, the district court concluded that the amended complaint had not stated a claim for selective enforcement because Thorne had not shown that he was treated differently from similarly-situated inmates.

## II.

We review a dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) *de novo*. *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). We "accept[] the factual allegations in the complaint as true and construe[] them in the light most favorable to the plaintiff." *Id.* To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The complaint must include enough facts "to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965.

The Supreme Court has explained that a prisoner may not use 42 U.S.C. § 1983 to challenge "the fact or duration of his confinement." *Wilkinson,* 544 U.S. at 78, 125 S.Ct. at 1245 (quotation omitted). A prisoner seeking release from custody, or a reduction in his sentence, must seek habeas relief instead. *Id.* at 78, 125 S.Ct. at 1245. Nevertheless, a claim challenging parole procedures may be brought under § 1983 if success on that claim would not automatically reduce the defendant's term of imprisonment. *Id.* at 82, 125 S.Ct. at 1248.

Here, some of Thorne's claims challenged the fact and duration of his confinement. Specifically, Thorne argued that Examiner Jennings violated his right to due process by revoking his parole, and that the Parole Commission acted improperly by setting a release date of 2034, rather than following the hearing examiner's recommendation of an earlier date. Success on those claims would necessarily have invalidated the revocation of Thorne's parole or shortened his term of imprisonment. Therefore, the district court properly concluded that those particular claims were not cognizable under § 1983. *See Wilkinson*, 544 U.S. at 78, 125 S.Ct. at 1245. The district court correctly recognized that Thorne's other challenges to Florida's parole procedures were cognizable under § 1983, as success on those claims would not necessarily lead to Thorne's release from

custody. *See id.* at 82, 125 S.Ct. at 1248.

## III.

The Eleventh Amendment bars state-law claims against a state in federal court, even where the plaintiff is only seeking prospective relief. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 103-06, 104 S.Ct. 900, 909-11, 79 L.Ed.2d 67 (1984). Suits against a state officer in his or her official capacity are considered to be suits against the state. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

In this case, the district court correctly determined that the defendants were entitled to Eleventh Amendment immunity to the extent that Thorne was arguing that the Parole Commission failed to follow state law in setting his presumptive parole release date. *See Pennhurst*, 465 U.S. at 103-06, 104 S.Ct. at 909-11. Notably, the district court did not conclude that the defendants were entitled to Eleventh Amendment immunity with respect to Thorne's federal-law claims, for which he was only seeking prospective relief. Instead, the court dismissed those claims on other grounds.

## IV.

The federal constitution prohibits the states from enacting *ex post facto* laws that retroactively increase the penalty for a crime after it has been committed. U.S.

Const., art. I., § 10, cl. 1; *Garner v. Jones*, 529 U.S. 244, 249, 120 S.Ct. 1362, 1367, 146 L.Ed.2d 236 (2000). The Supreme Court has explained that retroactive changes in the law governing parole of prisoners can violate the Ex Post Facto Clause if those changes create a significant risk of prolonging the prisoner's incarceration. *Garner*, 529 U.S. at 251, 120 S.Ct. at 1368.

Generally, Florida law provides that parole interviews are to be held every two years. Fla.Stat. § 947.174(1)(a). In 1997, the Florida legislature amended the parole statutes to provide that prisoners convicted of certain serious offenses, including murder, would have parole interviews once every five years. Fla.Stat. § 947.174(1)(b).[1] This five-year period between interviews applies only if the Parole Commission "finds that it is not reasonable to expect that parole will be granted at a hearing during the following years and states the bases for the finding in writing." *Id.*

We do not have any published opinions addressing whether Fla.Stat. § 947.174(1)(b) violates the Ex Post Facto Clause, but the Supreme Court has upheld the constitutionality of a similar California parole statute. *California Dep't of Corrections v. Morales*, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).

---

[1]In 2010, subsection (1)(b) was amended to increase the time interval between parole interviews from five years to seven years.

9

The statute at issue in *Morales* permitted California's parole board to defer parole hearings for up to three years if the prisoner's offense involving the taking of a life, and if the parole board found that it was not reasonable to expect that parole would be granted at a hearing during the following years. *Id.* at 503, 115 S.Ct. at 1600. The statute also required the board to explain its decision in writing. *Id.* The Supreme Court concluded that this statute did not violate the Ex Post Facto Clause because: (1) it applied only to a narrow class of prisoners "for whom the likelihood of release on parole is quite remote"; (2) it only affected subsequent hearings, meaning that it never applied until after an initial hearing had been held; (3) it required the parole board to make specific findings justifying the deferral, and to explain its decision in writing. *Id.* at 510-11, 115 S.Ct. at 1603-04.

In this case, Thorne failed to establish that the five-year interval between parole hearings carried a significant risk of prolonging his incarceration. Section 947.174 is similar to the California statute that the Supreme Court upheld in *Morales*, as it applies only to a narrow group of prisoners, and requires a specific, written finding that "it is not reasonable to expect that parole will be granted at a hearing during the following years." *See* Fla.Stat. § 947.174(1)(b); *Morales*, 514 U.S. at 510-11, 115 S.Ct. at 1603-04. Here, the Parole Commission determined that it was unlikely that Thorne would be eligible for parole prior to his next

10

scheduled hearing in 2012 given the nature of his conviction, his status as a parole

violator, and the risk that his release would pose to others.  Thus, the five-year

interval between reviews did not carry a significant likelihood of prolonging

Thorne's incarceration.  Accordingly, the district court properly concluded that

Thorne had failed to state an *ex post facto* claim.  *See Garner*, 529 U.S. at 251,

120 S.Ct. at 1368.

V.

To plead an equal protection claim, a plaintiff must allege that "through

state action, similarly situated persons have been treated disparately."  *Thigpen v.*

*Bibb County, Ga., Sheriff's Dep't,* 223 F.3d 1231, 1237 (11th Cir. 2000),

*abrogated on other grounds by National R.R. Passenger Corp. v. Morgan,* 536

U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The Supreme Court has

recognized "class of one" equal protection claims where a plaintiff asserts that she

was irrationally discriminated against on an individual basis, rather than as a

member of a particular group.  *Village of Willowbrook v. Olech*, 528 U.S. 562,

564, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000).  A plaintiff can establish a

"class of one" claim by showing that he was "intentionally treated differently from

others similarly situated and that there is no rational basis for the difference in

treatment."  *Id.* at 564, 120 S.Ct. at 1074.  "To be 'similarly situated,' the

11

comparators must be prima facie identical in all relevant respects." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1264 (11th Cir. 2010) (quotation and emphasis omitted).

A plaintiff seeking to bring a procedural due process claim must establish that: (1) he was deprived of a constitutionally protected liberty or property interest, (2) through state action, and (3) he was not provided with a constitutionally adequate process to contest the deprivation. *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006). We have explained that Florida's parole system does not create a protected liberty interest in parole because the Parole Commission always has discretion over whether to grant or deny parole. *Damiano v. Florida Parole and Probation Comm'n,* 785 F.2d 929, 931-32 (11th Cir. 1986); *Staton v. Wainwright*, 665 F.2d 686, 688 (5th Cir. Unit B, 1982).[2]

Here, Thorne's amended complaint failed to state an equal protection claim because it did not show that he was treated differently from similarly-situated prisoners. Thorne did assert that other prisoners who had been convicted of murder and who had previous parole violations had received earlier release dates and were interviewed every two years rather than every five years, but he did not

---

[2]We are bound by decisions issued by a Unit B panel of the former Fifth Circuit. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

show that those other prisoners were similar to him in all relevant respects. For example, it is unclear whether the other prisoners had been convicted of multiple separate offenses, whether they had an escalating history of criminal conduct, or whether their release might cause an unreasonable risk to others, three factors that the Parole Commission relied upon in Thorne's case. In short, Thorne's allegations of disparate treatment were not detailed enough to raise his right to relief above a speculative level. *See Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965.

Thorne's amended complaint also failed to state a procedural due process claim. As we have explained, Florida's parole system does not give rise to a protected liberty interest because the decision on whether to grant parole is left to the discretion of the Parole Commission. *See Damiano,* 785 F.2d at 931-32; *Staton*, 665 F.2d at 688. Although some of Florida's procedures regarding parole have changed since *Damiano* and *Staton* were decided, the Parole Commission still has substantial discretion over whether to grant or deny parole. *Cf.* Fla.Stat. § 947.18. As Thorne's complaint did not allege a violation of a protected liberty interest, the district court properly dismissed his due process claim. *See Arrington*, 438 F.3d at 1347.

Accordingly, after review of the record and the parties' briefs, we affirm the dismissal of Thorne's complaint.

**AFFIRMED.**